IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL LITTLE,

      Plaintiff,

v.                                      CIVIL ACTION NO. 5:11cv41
                                            (Judge Stamp)

W. HOLZAPFUL[1], Special Investigating Supervisor,
ADAM PRICE, Correctional Officer,
CASE MANAGER COORDINATOR, Unknown[2]

      **Defendants.**

## REPORT AND RECOMMENDATION

### I. BACKGROUND

The *pro se* plaintiff initiated this civil rights action on March 14, 2011. In the complaint, filed pursuant to <u>Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics</u>, 403 U.S. 388 (1971, the plaintiff alleges violations of his constitutional rights by various federal employees of the United States Penitentiary Hazelton ("USP Hazelton"). On June 17, 2011, the plaintiff was granted leave to proceed *in forma pauperis*. On August 16, 2011, upon preliminary review of the file, the undersigned determined that summary dismissal was not appropriate and directed the United States Marshal Service to serve the Complaint.

On November 30, 2011, the defendants filed a Motion to Dismiss or, in the alternative,

---

[1] The plaintiff incorrectly spelled the name of William Holzapfel in the complaint.

[2] As first identified by the defendants in their Motion To Enlarge Time and to Consolidate Responsive Pleading deadline, this defendant's name is Cathy Milton. (Doc. 23, p.1).

1

Motion for Summary Judgment. A Roseboro Notice was issued on December 5, 2011.[3] On December 27, 2011, the plaintiff filed his response.

## II. THE PLEADINGS

### A. The Complaint

During the time period relevant to this complaint, the plaintiff was incarcerated at USP Hazelton which is located in Bruceton Mills, West Virginia.[4] In the complaint, the plaintiff asserts that he arrived at USP Hazelton on April 29, 2009, and was assigned to housing unit C-2. On April 30, 2009 at 6:30 a.m., the plaintiff alleges that he was attacked in his housing unit by the brother of the victim the plaintiff was convicted of murdering. As a result of the attack, the plaintiff claims that he suffered multiple stab wounds to his head, face, back, ribs, and hand which required the plaintiff to be sent to a local hospital.

The plaintiff alleges that Cathy Milton, a former Case Manager Coordinator of USP Hazelton ("CMC"),[5] is liable for the attack by failing to investigate whether the plaintiff should have been placed in general population or, more specifically, whether any relatives of the plaintiff's murdered victim were incarcerated at USP Hazelton. Additionally, the plaintiff alleges

---

[3] Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (finding that the court must inform a *pro se* plaintiff of his right to file material in response to a motion for summary judgment).

[4] Plaintiff is currently incarcerated at United States Penitentiary McCreary ("USP McCreary"), which is located in McCreary County, Kentucky.

[5] In his original complaint, the plaintiff identifies Milton as the "case manager of U.S.P. Hazelton name unknown." (Doc. 1, p. 3). In the government's response, they have identified the "unnamed" defendant as Cathy Milton, a former Case Management Coordinator at USP Hazelton. Ms. Milton has since retired. (Doc. 27-1, p. 1).

defendant W. Holzapful, a former Special Investigating Supervisor ("SIS") at USP Hazelton,[6] is liable by failing to place the plaintiff in the Special Housing Unit ("SHU") until an investigation could be completed. Finally, the plaintiff alleges defendant Adam Price, a correctional officer at USP Hazelton, is also liable because he allowed the plaintiff's attacker to enter his housing unit and attack the plaintiff. As relief, the plaintiff is seeking damages in the amount of $1,020,000.00.

## B. The Defendant's Motion

In response to the complaint, the defendants assert that the plaintiff's complaint should be dismissed for the following reasons:

(1) Plaintiff's claims must be dismissed for failure to exhaust his administrative remedies.

(2) The defendants did not fail to protect plaintiff from the assault.

(3) The defendants are entitled to qualified immunity.

(4) Any claims against the defendants in their official capacities must fail.

## C. The Plaintiff's Reply

In his reply, the plaintiff argues that he has stated a claim for which relief can be granted. In support of that argument, the plaintiff argues:

(1) The United States has statutorily waived immunity on claims alleging personal injuries caused by negligent conduct of government employees acting in their official capacities.[7]

---

[6] At the time of the incident defendant William Holzapful was a SIS technician at USP Hazelton. Since January 2011, Holzapful has been employed at the prison as a Lieutenant.

[7] The plaintiff is correct in noting that under the Federal Tort Claims Act ("FTCA") the Federal Government has waived their immunity in certain civil actions. It is unclear whether the plaintiff

3

(2) The defendants prevented him from properly exhausting his administrative remedies.

(3) In a new allegation, the defendants have violated the Eighth Amendment by denying or delaying plaintiff's access to medication and medical treatment.[8]

### III. STANDARD OF REVIEW

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that

---

is now attempting to raise a claim under the FTCA. However, the plaintiff initiated this action as a Bivens complaint and not as a complaint under the FTCA. Moreover, the plaintiff has not sought permission to amend his complaint. Finally, The plaintiff's administrative tort claim was denied on August 17, 2010, and he had six months in which to file a FTCA with this Court. Because the plaintiff did not initiate the instant action until March 14, 2010, beyond the 6-month time limitation, any attempt to raise a FTCA would be time barred.

[8] A review of the plaintiff's complaint clearly establishes that he made no allegations regarding medical care. Again, he has not requested leave to amend his complaint, and the plaintiff's own exhibits clearly establish that he did not attempt to exhaust this issue before his complaint was filed. Therefore, the undersigned has declined to address this issue.

4

a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," (Id). (citations omitted), to one that is "plausible on its face," (Id). at 570, rather than merely "conceivable." (Id). Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. (Id)**.**

**B. Summary Judgment**

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary

judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." (Id) "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Matsushita Elec. Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 587-88 1986).

## IV. ANALYSIS

### A. Exhaustion of Administrative Remedies

Under the Prison Litigation Reform Act (PLRA), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983, or any other federal law, must first exhaust all available administrative remedies. 42 U.S.C. § 1997(e)(a). Exhaustion as provided in § 1997(e)(a) is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). A Bivens action, like an

6

action under 42 U.S.C. § 1983, is subject to the exhaustion of administrative remedies. Porter v. Nussle, 534 U.S. 516, 524 (2002). The exhaustion of administrative remedies "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes,"[9] and is required even when the relief sought is not available. Booth at 741. Because exhaustion is a prerequisite to suit, all available administrative remedies must be exhausted *prior to* filing a complaint in federal court. See Porter, at 524 (citing Booth, 532 U.S. at 741) (emphasis added).

Moreover, in Woodford v. Ngo, 548 U.S. 81, 84-85 (2006), the United States Supreme Court found that the PLRA's exhaustion requirement serves three main purposes: (1) to "eliminate unwarranted federal court interference with the administration of prisons"; (2) to "afford corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case"; and (3) to "reduce the quantity and improve the quality of prisoner suits." Therefore, "the PLRA exhaustion requirement requires *full* and *proper* exhaustion." Woodford at 92-94 (emphasis added). Full and proper exhaustion includes *meeting all the time and procedural requirements of the prison grievance system*. Id. at 101-102 (emphasis added).

The Bureau of Prisons provides a four-step administrative process beginning with attempted informal resolution with prison staff (BP-8). See 28 C.F.R. § 542.10, et seq. If the prisoner achieves no satisfaction informally, he must file a written complaint to the Warden (BP-9), within 20 calendar days of the date of the occurrence on which the complaint is based. If an inmate is not satisfied with the Warden's response, he may appeal to the Regional Director of the

---

[9] Id.

7

Bureau of Prisons ("BOP") (BP-10) within 20 days of the Warden's response. Finally, if the prisoner has received no satisfaction, he may appeal to the Office of General Counsel (BP-11) within 30 days of the date the Regional Director signed the response.[10] An inmate is not deemed to have exhausted his administrative remedies until he has filed his complaint at all levels. 28 C.F.R.§ 542.10-542.15; Gibbs v. Bureau of Prison Office, FCI, 986 F.Supp. 941, 943 (D.Md. 1997).

Here, the plaintiff failed to exhaust his administrative remedies before filing in federal court. On July 8, 2009, sixty-eight (68) days after the alleged incident, the plaintiff's BP-9 request was received by the Warden's office at USP Hazelton. (Doc. 1-1, p. 5). The request was properly denied because the plaintiff had failed to submit the request within twenty (20) days of the alleged incident.[11] On September 25, 2009, the plaintiff appealed to the Regional Director of the BOP. (Doc.1-1, p. 3). On October 20, 2009, the plaintiff's appeal was rejected because he

---

[10] "If accepted, a Request or Appeal is considered filed on the date it is logged into the Administrative Remedy Index as received. Once filed, response shall be made by the Warden or CMM. within 20 calendar days; by the Regional Director within 30 calendar days; and by the General Counsel within 40 calendar days...If the time period for response to a Request or Appeal is insufficient to make an appropriate decision, the time for response may be extended once by 20 days at the institution level, 30 days at the regional level, or 20 days at the Central Office level. Staff shall inform the inmate of this extension in writing. Staff shall respond in writing to all filed Requests or Appeals. If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." 28 C.F.R. § 542.18.

[11] The deadline for completion of informal resolution and submission of a formal written Administrative Remedy Request is 20 calendar days following the date on which the basis for the request occurred. 28 C.F.R. § 542.14(a). Where an inmate demonstrates a valid reason for delay, an extension in filing time may be allowed. Included within the list for valid reasons for a delay are...an unusually long period taken for informal resolution attempts. 28 C.F.R. § 542.14. There is no indication that the plaintiff raised the issue of no responses or delayed responses to his BP-8 in pursuing his BP-9s through BP-11s.

failed to provide a copy of his BP-9 administrative remedy request and a copy of his BP-9 response from the Warden. (Id.). The plaintiff appealed to the BOP's Office of General Counsel on October 28, 2009.(Doc. 1-1, p. 1) On December 15, 2009, the plaintiff's appeal was rejected, with a notation that the central office concurred with the institution's finding that his original request (BP-9) was untimely. (Id.).

The Plaintiff's complaint clearly establishes that a prisoner grievance procedure is available at USP Hazelton. (Doc. 1-2, p. 2). It is equally clear that the plaintiff failed to satisfy the grievance procedure. The undersigned notes that the plaintiff alleges that staff at U.S.P Hazelton prevented him from properly exhausting his remedies. In support of this claim, the plaintiff has attached a number of exhibits. One, indicates that he gave three BP-8 forms to his counselor, Mr. Marrero, on May 12, 2009. (Doc. 35-1). Mr. Marrero, in turn, indicated that they were sent to the captain's office. However, one BP-8 complained of assault with a deadly weapon, one complained of racial discrimination by S. Eirich, and one complained of aggravated battery by case manager Matthews and supervising officer Rogers.(Doc. 35-1, p. 3). Accordingly, at best, only the BP 8 complaining of assault with a deadly weapon relates to the issues raised in this complaint. However, this BP-8, which eventually was received on May 26, 2009, only complained of the actions of the "unknown shift midnight shift [correctional officer] and made no reference to either the Case Manager Coordinator ("CMC") Cathy Milton or SIS technician William Holzapfel. (Doc. 35-2, p. 4). Therefore it is clear, even accepting the plaintiff's allegation that the BOP prevented the plaintiff from timely exhausting his administrative remedies, that he never initiated grievances against either Cathy Milton or W. Holzapful, and the complaint against them should be dismissed for failure to exhaust

9

administrative remedies.[12]

## B. Deliberate Indifference

The Eighth Amendment imposes a duty on prison officials "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). "Being violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" Id at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)). "For a claim based on failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm," and that the prison officials acted with "'deliberate indifference' to inmate health or safety.'" Id. The Supreme Court left open the point at which a risk of inmate assault becomes sufficient for Eighth Amendment purposes. Id. n3. However, the Supreme Court held that "[a] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. Id.at 837. Furthermore, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence, the plaintiff must show that the defendants knew of the risk and consciously disregarded it. Whitley v. Albers, 475 U.S. 312. 319 (1986); Moore v. Winebrenner, 927 F.2d 1312 (4th Cir. 1991).

### A. Cathy Milton

The plaintiff was sentenced to a life term by the Superior Court of the District of

---

[12]The undersigned also recognizes that the plaintiff alleges that by filing an administrative tort claim that he exhausted his remedies for a Bivens complaint. In this respect he is clearly mistaken.

10

Columbia on July 6, 2001, for Murder II while armed; possession of a firearm during a crime of violence; and attempted voluntary manslaughter. He entered the BOP custody on November 15, 2002. On April 29, 2009, he was transferred from USP Atwater, California to USP Hazelton. (Doc. 27-2, p.2). The assault, which is the subject of this complaint, occurred the following day.

The plaintiff claims that Cathy Milton is liable for his injuries because, as CMC, she should have made an investigation, prior to the his arrival, whether any relatives of his victim were incarcerated at USP Hazelton. (Doc. 1-2, pg. 6).However, when an inmate is transferred to USP Hazelton, Milton's duties required her to review SENTRY[13] to check for potential conflicts with other inmates housed at USP Hazelton. Some factors Milton would check for include: whether an inmate is a separatee[14] of another inmate, whether the inmate has any gang affiliations, and whether the inmate is housed at the correct security level. (Doc. 27-1, pg. 2). The plaintiff's information on SENTRY contained no information that would lead to further inquires. (Doc 27-1. pg. 3). Other than the plaintiff's unsupported assertion, there is no basis for this court to include that Milton was required to conduct a "family tree" type search for any person at USP Hazelton who might have been related to the plaintiff's victim. Because Milton performed the duties of her role as CMC without "deliberate indifference" to the plaintiff's safety, she is not liable for the plaintiff's injuries. See Farmer, 511 U.S. at 834.

**B. W. Holzapful**

---

[13] SENTRY is the Bureau of Prison's national computer system.

[14] "Separatee" refers to a term used by the Designation and Sentence Computation Center (DSCC) to describe inmates who should remain separated in prison facilities. This information is then uploaded to SENTRY where Milton would have access to the information. (Doc. 27-1. pg. 2).

On April 29, 2009, when the plaintiff arrived at USP Hazelton, William Holzapfel was an SIS technician. The plaintiff alleges that during his initial intake interview, Holzapfel asked him if there was any reason he should not be housed in general population. (Doc. 1-2, pg. 6). The plaintiff alleges that he responded that he was concerned family members of his murder victim may be incarcerated at USP Hazelton. (Id.). The plaintiff alleges that Holzapfel should have placed him in the SHU while Holzapfel conducted an investigation to find out whether any of the victim's family members were indeed housed at USP Hazelton. (Id.).

In his declaration, Holzapfel denies that the plaintiff informed him that family members of his victim might be incarcerated at USP Hazelton. Holzapfel states that once he asked the plaintiff "is there any reason/issue that would preclude you from being housed in General Population," the plaintiff did not verbally answer the question, but instead grabbed his penis."[15] Additionally, Holzapfel notes that if the plaintiff had expressed concerns that his victim's family members were housed at USP Hazelton, he would have taken further action to determine if there was a viable threat to him. Finally, Holzapfel denies that he knew the brother of the plaintiff's victim was incarcerated at USP Hazelton. (Doc. 27-3, p. 2).

In response to Holzapfel's claim that he did not respond to the inquiry whether he had any reason or issue that would preclude him from being housed in the general population, but instead merely grabbed his penis, the plaintiff has submitted a affidavit in which he maintains that he, in fact, responded "only if family members of the named victims are in the institution/ on

---

[15]Holzapfel indicates that he does not know why the plaintiff made this motion but annotated it on the SIS Intake Screening Interview Form contemporaneously to when it happened. Although Holzafel indicates that the Form is included as Attachment A, there are no attachments filed with the defendants' Memorandum, other than the Declaration of Cathy Milton, Kevin Littlejohn, William Holzapfel, and Adam Price.

12

compound." (Doc. 34, p. 1). Moreover, the plaintiff alleges that if he had grabbed his penis, he would have been subject to disciplinary action. Therefore, the plaintiff continues to maintain that Holzapfel was placed on notice that he faced a substantial risk to his safety, and Holzapfel ignored that risk.

The affidavits of Holzapfel and the plaintiff create a genuine issue of material fact. Construing the pleadings in light most favorable to the plaintiff, it would appear that the plaintiff's allegation against Holzapfel would survive the Motion to Dismiss and for Summary Judgment. However, because the plaintiff's own exhibits establish that he never raised the inactions of Holzapful in any of his administrative grievances, his claim is due to be dismissed for failure to exhaust his administrative remedies.

### C. Adam Price

The plaintiff alleges that Adam Price, a correctional officer at USP Hazelton, is also liable for the plaintiff's injuries because he negligently "violated security protocol when he permitted plaintiff [sic] attacker to enter an unauthorized area . . . for the purpose of attacking [the] plaintiff. (Doc. 1-2, pg. 7). On April 30, 2009, the morning of the alleged incident, Price observed an inmate entering the plaintiff's housing unit. (Doc. 27-4, pg. 1). Price ordered the inmate to stop, however the inmate ignored Price's commands and continued to walk into the plaintiff's housing unit and began to fight with the plaintiff. (Id.). Price called for staff assistance and ordered the plaintiff and other inmate to cease fighting (Id.). Additional staff soon arrived and separated the plaintiff and alleged attacker, along with a weapon that was used in the altercation. (Id.). As a correctional officer, Price was unarmed during the incident. (Doc. 27-4, pg 2). Instead of intervening alone and unarmed between two inmates (with at least one inmate

carrying a weapon), Price called for staff assistance before taking physical action to separate the plaintiff and inmate. (Id.) Price took reasonable measures to end the altercation between the plaintiff and his alleged attacker. Price had ordered the plaintiff's alleged attacker to stop on multiple occasions, and when the inmates began fighting, Price again ordered them to stop. (Doc. 27-4, pg. 1-2). It was reasonable that Price, being unarmed, would call for assistance before attempting to separate two armed inmates.

As previously noted, the Eighth Amendment is not violated by the negligent failure to protect inmates from violence. At most, the plaintiff has alleged negligence on Price's part. The plaintiff has made no showing nor allegation even that, prior to the assault, Price knew that the plaintiff's attacker posed a risk and consciously disregarded it. Therefore, the plaintiff's claim against Price should be dismissed.

## V. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the defendant's Motion to Dismiss, or in the Alternative, Motion for Summary Judgment (Doc. 26) be **GRANTED** and that the complaint be **DISMISSED WITH PREJUDICE** with respect to his claims against Cathy Milton and Adam Price for failure to state a claim upon which relief can be granted, and **DISMISSED WITHOUT PREJUDICE** with respect to his claim against William Holzapfel for failure to exhaust his administrative remedies.

Within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Frederick P. Stamp, Jr.,

United States District Judge.  Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Report and Recommendation to the *pro se* plaintiff by certified mail, return receipt requested, to his last known address as shown on the docket The Clerk is further directed to provide a copy to all counsel of record via electronic means.

DATED: June 29, 2012

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE