IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MICHAEL LITTLE,

    **Plaintiff,**

v.                                         Civil Action No. 5:11cv41
                                               (Judge Stamp)

UNITED STATES OF AMERICA,

    **Defendant.**

## REPORT AND RECOMMENDATION

### I. Factual and Procedural History

On March 14, 2011, the plaintiff filed a Complaint alleging deliberate indifference on the part of three USP Hazelton staff members with respect to a fight that occurred on April 30, 2009. On September 11, 2012, the District Court dismissed the plaintiff's Bivens claims. In addition, the District Court noted that while it was not clear whether the plaintiff has asserted a Federal Tort Claim ACT ("FTCA") claim, to the extent that he was attempting to do so, the same was untimely in that it was filed more than six months after his administrative tort claim was denied. The plaintiff appealed. On March 14, 2013, the United States Court of Appeals for the Fourth Circuit affirmed the District Court's order in so far as it dismissed plaintiff's Bivens claim. However, the Fourth Circuit vacated that portion of the order dismissing the possible FTCA claim. On remand, the District Court concluded that plaintiff's response to the Motion to Dismiss filed by the Bivens defendants should have been construed as a motion to amend to add a FTCA claim. By order entered on June 12, 2013, the Court gave the plaintiff time to file an amended complaint. On July 3, 2013, the plaintiff filed an amended complaint. On that same date, an order to answer was entered, and the clerk was directed to issue a 60-days summons for the USA. On October 18, 2013, the United States filed a Motion to

Dismiss or, in the alternative, Motion for Summary Judgment with supporting memorandum. On October 22, 2013, a Roseboro Notice was issued. On November 20, 2013, the plaintiff filed his response to the Roseboro Notice. On June 26, 2014, the plaintiff filed a Supplemental Response.

## II. The Pleadings

### A. The Complaint

In his complaint, the plaintiff alleges multiple negligent acts by staff at USP Hazelton beginning on April 29, 2009, when he was transferred to that facility.[1] Specifically, the plaintiff alleges that staff utilized improper classification procedures before placing him in the general population at that institution. The plaintiff also alleges that staff members failed to investigate the possibility that family members of his victim were in USP Hazelton. The plaintiff further alleges that staff was negligent in allowing another inmate to enter his unit without clearing the metal detector and did not adequately pursue or try to stop that inmate from attacking him. The plaintiff also alleges that staff failed to ensure that he received proper medical treatment after he was released from an outside hospital. Finally, the plaintiff alleges that staff failed to provide him with remedy forms and impeded him from exhausting his administrative remedies. For relief, the plaintiff seeks $1,000,000.00 in compensatory damages and $20,000.00 in punitive damages.

### B. Defendant's Motion to Dismiss or, in the alternative, for Summary Judgment

The defendant seeks the dismissal of plaintiff's case for following reasons:

1) The plaintiff's medical malpractice claim must be dismissed because he did not file a Certificate of Merit with his complaint as required by West Virginia law.

2) The plaintiff's allegations regarding staff conduct with regard to the administrative remedy process must be dismissed for failure to state a claim.

---

[1] The plaintiff was sentenced to a life term by the Superior Court of the District of Columbia on July 6, 2001, for Murder II while armed; possession of a firearm during a crime of violence; and attempted voluntary manslaughter. He entered the BOP custody on November 15, 2006. On April 29, 2009, he was transferred from USP Atwater to USP Hazelton. (Doc. 27-2, p.2). The assault which underlies this complaint occurred the following day.

3) The plaintiff's allegations of improper classification and failure to protect him must be dismissed under the discretionary function exception to the FTCA.

## C. Plaintiff's Memorandum in Opposition to Defendant's Motion to Dismiss

The plaintiff argues that the defendant has not established that this matter should be dismissed without a trial. In particular, the plaintiff alleges that the defendants have not demonstrated that they are entitled to qualified immunity. In his supplemental response, the plaintiff expounds on the discretionary function exception and why it does not apply. In addition, the plaintiff maintains that the defendant's assertion that the law of West Virginia governs his malpractice claim lacks merit because he is a federal prisoner and does not have access to West Virginia law.

## III. Standard of Review

### A. Motion to Dismiss

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992) (citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the

plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I.DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir.2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir.2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir.2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a "claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

## B. Summary Judgment

Pursuant to Rule 56c of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." In applying the standard for summary judgment, the Court must review all the evidence "in the light most favorable to the nonmoving party." Celotex Corp. V. Catrett, 477 U.S. 317, 322-23 (1986). The court must avoid weighing the

evidence or determining the truth and limit its inquiry solely to a determination of whether genuine issues of triable fact exist. Anderson v. liberty lobby, Inc., 477 U.S. 242, 248 *1986).

In Celotex, the Supreme Court held that the moving party bears the initial burden of informing the Court of the basis for the motion and of establishing the nonexistence of genuine issues of fact. Celotex at 323. Once "the moving party has carried its burden under Rule 56, the opponent must do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Electric Industrial Co. V. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The nonmoving party must present specific facts showing the existence of a genuine issue for trial. Id. This means that the "party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials of [the] pleading, but...must set forth specific facts showing that there is a genuine issue for trial." Anderson at 256. The "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Id. at 248. To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they create fair doubt rather than encourage mere speculation. Anderson at 248. Summary judgment is proper only "[w]here the record taken as a whole could not lead a rational trier of fact to find for the

## IV. Analysis

### A. THE FTCA –Failure to Protect

The FTCA is a comprehensive legislative scheme by which the United States has waived its sovereign immunity to allow civil suits for actions arising out of negligent acts of agents of the United States. The United States cannot be sued in a tort action unless it is clear that Congress has

5

waived the government's sovereign immunity and authorized suit under the FTCA. Dalehite v. United States, 346 U.S. 15, 30-31 (1953). The provisions of the FTCA are found in Title 28 of the United States Code. 28 U.S.C. § 1346(b), § 1402(b), § 2401(b), and §§ 2671-2680.

Pursuant to the FTCA, the United States is liable in the same manner and to the same extent as a private individual under like circumstances in accordance with the law of the place where the act or omission occurred. 28 U.S.C. §§ 2674 & 1346(b)(1); Medina v. United States, 259 F.23d 220, 223 (4th Cir. 2001). In West Virginia, in every action for damages resulting from injuries to the plaintiff alleged to have been inflicted by the negligence of the defendant, the plaintiff must establish three elements: (1) a duty which the defendant owes to him; (2) a negligent breach of that duty; and (3) injuries received thereby, resulting proximately from the breach of that duty. Webb v. Brown & Williamson Tobacco Co., 2 S.E.2d 898, 899 (W.Va. 1939). The burden is on the plaintiff to prove these elements by a preponderance of the evidence. Id. at 899; see also Murray v. United States, 215 F.3d 460, 463 (4th Cir. 2000). Therefore, the plaintiff must prove that the "defendant's breach of duty was more likely than not the cause of the injury." Murray at 463 (quoting Hurley v. United States, 923 F.2d 1091, 1094 (4th Cir. 1991); see also Strahin v. Cleavenger, 603 S.E.2d 197 (W.Va. 2004)(stating that "no action for negligence will lie without a duty broken.").

The FTCA includes specific enumerated exceptions in 28 U.S.C. §2680. If an exception applies, the United States may not be sued, and litigation based upon an exempt claim is at an end. Smith v. United States, 507 U.S. 197 (1993); Dalehite, supra. Among the exceptions to the FTCA most frequently applied is the "discretionary function." The discretionary function exception precludes governmental liability for "[a]ny claim based upon ... the exercise or performance or failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. §

2680(a). The discretionary function exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)</u>, 467 U.S. 797, 808 (1984). Congress believed that imposing liability on the government for its employees' discretionary acts "would seriously handicap efficient governmental operations." <u>Id</u>. at 814 (internal citations and quotations omitted).

The United States Supreme Court has announced a two-step test for determining whether the discretionary function exception bars suit against the United States in a given case. First, the Court must consider the nature of the conduct and determine whether it involves "an element of judgment or choice." <u>United States v. Gaubert</u>, 499 U.S. 315, 322 (1991). Government conduct does not involve an element of judgment or choice and is not discretionary if "a federal statute, regulation, or policy specifically prescribes a course of action for an employee to follow, because the employee has no rightful option but to adhere to the directive." <u>Id</u>. at 322 (internal citations and quotations omitted). If the conduct in question involves the exercise of judgment or choice, the second step of the analysis is to determine whether that judgment is grounded in considerations of public policy. "[T]he purpose of the exception is to prevent judicial second-guessing of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." <u>Id</u>. at 323.

With respect to federal prisoners, the Supreme Court has determined that the duty of care owed by the BOP is fixed by 18 U.S.C. §4042, independent of an inconsistent state rule. <u>United States v. Munitz</u>, 280 F. Supp. 542, 546 (S.D.N.Y 1968). Title 18 U.S.C. §4042 defines the duty of care owed to a prisoner as "the exercise of ordinary diligence to keep prisoners safe and free from harm." <u>Jones v. United States</u>, 534 F.2d 53, 54 (5th Cir. 1976). However, the BOP's duty towards the

protection of prisoners is not the guarantee of "a risk-free environment." See Usher v. United States, 2010 WL 3721385 (E.D. Ky. Sept. 15, 2010).

In West Virginia, negligence is "always determined by assessing whether the actor exercised 'reasonable care' under the facts and circumstance of the case, with reasonable care being that level of care a person of ordinary prudence would take in like circumstances." Strahin v. Cleavenger, 603 S.E.2d 197, 205 (W.Va. 2004). "A long standing premise of the law of [West Virginia] is that negligence is the violation of the duty of care under the given circumstances. It is not absolute, but is always relative to some circumstances of time, place manner, or person." Setser v. Browning, 590 S.E.2d 697, 701 (W.Va. 2003). Accordingly, the duty of care owed to an inmate under West Virginia law is consistent with 8 U.S.C. §4042.

Although 18 U.S.C. §4042 sets forth the mandatory duty of care, it does not direct how the duty is fulfilled. See Calderon v. United States, 123 F.3d 947, 950 (7th Cir. 1997)(finding the statute "sets forth no particular conduct that the BOP personnel should engage in or avoid while fulfilling their duty to protect inmates."). However, under the FTCA, in disputes between prisoners, it is clear that BOP employees could be negligent in their duty to protect prisoners if they "knew or reasonably should have known of a potential problem" between inmates. Parrott v. United States, 536 F.3d 629, 637 (7th Cir. 2008).

1. **Improper Classification**

Once an offender is sentenced, the BOP has the responsibility of determining where he or she will be designated for the service of his sentence in accordance with Program Statement 5100.08, Inmate Security and Custody Classification Manual. The classification and designation functions have been centralized at the Designation and Sentence Computation Center ("DSCC") which is located at the BOP's Grant Prairie Office Complex in Texas. The DSCC receives all sentencing

material regarding the offender, including documents from the sentencing Court, U.S. Probation Office, and the U.S. Marshals Service. After receiving all of this information, DSCC personnel determine whether an inmate must be separated from another inmate (i.e. made "separates"). The BOP's National Computer, SENTRY, is then updated with this information. (Doc. No. 100-6, p. 2).

The plaintiff appears to argue that the BOP was required to do "proper research" of the central files of inmates coming into prison. (Doc. No. 79, p. 5). Clearly, maintaining order and security in a prison is the type of policy-based decision that the discretionary function exception was designed to shield. See Cohen v. United States, 151 Fed 3rd 1338, 1344 (11th Cir. 1998) ("Deciding how to classify prisoners and choosing the institution in which to place them are part and parcel of the inherently policy-laden endeavor of maintaining order and preserving security within our nation's prisons."); Dykstra v. U.S. Bureau of Prisons, 140 Fed 3rd 791, 796 (8th Cir. 1998) ("Prison officials supervise inmates based upon security levels, available resources, classification inmates, and other factors. These factors upon which prison officials based such decisions are inherently grounded in social, political, and economic policy. We have no difficulty in concluding that the discretionary function exception applies to the correctional officer's decision not to place Dykstra in protective custody or to take other protective action."); Calderon v United States, 123 Fed 3rd 947, 951 (7th Cir. 1997) ("It is clear that balancing the need to provide inmates security with the rights of the inmates to circulate and socialize within the prison involves consideration based on public policy.").

Here, the plaintiff does not allege that the DSCC did not consider the sentencing materials provided to them. Nor, has he alleged that he was a separatee from his attacker prior to the April 30, 2009 altercation. In fact, the plaintiff was not a separatee from the man with whom he fought prior to the fight. (Doc. 100-6, p. 3). Instead, the plaintiff argues that the proper research required of the BOP

9

is to perform the equivalent of a "family tree" search of an inmate's victims. However, as noted by the respondent, such a search is an impractical task.

The salient point guiding this court's review is the fact that the plaintiff bears the burden of proving that an equivocal waiver of sovereign immunity exists and demonstrating that the discretionary function exception does not apply. LeRose v. United States, 285 F. App'x 93, 96 (4th Cir. 2008); Welch v. United States, 409 Fed 3rd 646 (4th Cir. 2005). The plaintiff has failed to carry his burden to show that the United States classified him in violation of any mandatory duty. Therefore, his claims of improper classification should be dismissed. See Usry v. United States, at *6, 2013 WL 1196650 (N.D.W.Va. 2013).

2. **Placement In General Population**

The plaintiff alleges that he was wrongfully placed in the general population at USP Hazelton after he notified staff of a potential problem with such placement. More specifically, the plaintiff alleges that during the intake process at Hazelton, he was asked by Officer Hozapfel if there was any reason why he should not be placed in the general population. The plaintiff alleges that he responded by saying "only if family members of the named victim are in this institution on compound." (Doc. 79, p. 6). However, Officer Holzapfel denies that the plaintiff expressed to him any concerns about entering general population. Officer Holzapfel acknowledges that he interviewed the plaintiff upon his arrival at USP Hazelton on April 29, 2009. He also acknowledges that one of form questions he always asks is "is there any reason/issue that would preclude you from being housed in General Population?" Officer Holzapfel reviewed the form he filled out for the plaintiff, and when asked this question, the plaintiff did not verbally respond to him but instead grabbed his genitals. (Doc. 27-3, p.2).

Program Statement 5290.15, <u>Intake Screening</u>, governs the intake of inmates when they arrived at the institution. The program statement provides that the Warden shall ensure that a newly arrived inmate is cleared by the Medical Department and offered a social interview by staff before assignment to the general population. Staff is directed to observe the physical appearance of the inmate and interview him prior to placement in general population. Immediately upon an inmate's arrival, staff is obligated to interview the inmate to determine if there are non-medical reasons for housing the inmate away from the general population. Staff must evaluate both the general physical appearance and emotional condition of the inmate. At USP Hazelton, inmates are interviewed twice before housing is determined, once by the unit team and once by SIS staff. (Doc. 100-6, pp. 2-3). Once staff has conducted the interviews, observed the physical and emotional condition of the inmate, and the inmate is cleared by the Medical Department, then staff must use their discretion in deciding where to house the inmate. Such decisions balance a number of public policy considerations, including inmate safety, the ability of inmates to move about the facility, general concerns of prison security, and the effective use of limited resources. (<u>Id</u>.).

Even if the court were to accept the plaintiffs' assertion that he said "only if family members of the named victims are in the institution on compound," staff would have had discretion on how to process that information. As noted by the respondent, this case is similar to <u>Usry</u> <u>supra</u>. In that case, there was a factual dispute as to what information was conveyed by the inmate to the officer during the intake interview. In dismissing that case, the court held:

> "this factual dispute is irrelevant to this Court's determination regarding the United States fulfillment of its duties under P.S. 5290.15. That program statement section makes nothing mandatory beyond the actual interview and consideration of certain information. Accordingly, how the intake staff uses the information it learns through the intake process is a matter of discretion."

11

Usry, supra at fn 6. See also Brown v. United States, 569 that so 2nd 596, 600 (W.D.Va. 2008) (finding the discretionary function exception applied to a prison official's decision whether to place an inmate in the general population.)

Staff followed the mandatory duties as set forth under P.S. 5290.15. Accordingly, their decision to place the plaintiff in the general population after conducting the requisite interviews was within their discretion. Therefore, the discretionary function exemption applies, and the plaintiff fails to state a claim under the FTCA with respect to his placement in the general population.

### 3. Unit Officer Failed to Respond Appropriately to Attack on Plaintiff

On April 30, 2009, Correctional Officer Adam Price saw an inmate leaving housing unit C-1 and entering Housing Unit C-2, which was the plaintiff's housing unit. Officer Price ordered the inmate to stop, but he refused, Officer Price followed the inmate into the unit and observed the inmate and the plaintiff beginning to assault each other with weapons. He radioed for staff assistance and gave multiple orders for the inmates to stop fighting, which they ignored. Office Price then secured the unit to isolate the incident. Once more staff arrived, and it was safe to intervene, staff gained control of the plaintiff through the use of force. At that time, the other inmate threw down his weapon and went to the ground. Both inmates were then paced in restraints and escorted to Health Services. (Doc. 99-4, pp. 1-2).

When a federal prisoner sues under the FTCA for injuries caused by a fellow inmate, this court and others have uniformly held the action to be barred by the discretionary function exception. See, e.g., Usry v. United States, 2013 U.S. Dist. LEXIS 41420 (N.D. W.Va. 2013) aff'd. Usry v. United States, 2013 U.S. App. LEXIS 22528 (4th Cir. 2013); Donaldson v. United States, 281 Fed. App'x. 75, 76-78 (3rd Cir. 2008)(upholding dismissal of an FTCA claim that federal prison employees failed to protect plaintiff from assault by a fellow prisoner on a finding that the claim was

barred by the discretionary function exception); Alfrey v. United States, 276 F.3d 557, 565 (9th Cir. 2002); Cohen v. United States, 151 F.3d 1338, 1340 (11th Cir. 1998)(reversing judgment in favor of prisoner who brought an FTCA action for injuries sustained as the result of an attack by another inmate); Dykstra v. United States Bureau of Prisons, 140 F.3d 791 (8th Cir. 1998)(discretionary function exception applied, barring suit for BOP officials' failure to warn plaintiff that his youthful appearance might make him vulnerable to attack, or to place him in protective custody when plaintiff complained that fellow inmate was staring at him); Calderon v. United States, 123 F.3d 947 (7th Cir. 1997 (discretionary function exception applied to FTCA claim for government's failure to protect plaintiff from attack by cellmate); Buchanan v. United States, 915 F.2d 969 (5th Cir. 1990) (discretionary function exception applied to FTCA claim for damages by prisoners held hostage during a prison uprising); and Graham v. United States, 2002 U.S. Dist. LEXIS 1765 (E.D. Pa. Feb. 5, 2002).

In conclusion, the plaintiff's three claims of negligence against the BOP officials, for failing to properly classify him; wrongfully placing him in the general population; and failing to prevent or stop the attack in his housing unit all involved "an element of judgment or choice." Gaubert, *supra* at 322. Federal courts have consistently held that because §4042(a) does not mandate a specific, non-discretionary course of conduct, a plaintiff must either demonstrate that other mandatory directives were violated, or that a BOP employee made a discretionary judgment not grounded in the policy of the regulatory regime, in order to establish subject matter jurisdiction. See, e.g., Calderon, 123 F.3d at 950 (holding that like §4042(a), the regulations within 28 C.F.R. §541 regarding inmate discipline and special housing units also provide general guidance to BOP employees). Because each action by the Hazelton officials involved an element of judgment or choice, the inquiry then becomes whether the challenged action was based on considerations of public policy." Id. The BOP's decision to

classify the plaintiff as not having separatee status against "family members of his victim" was consistent with public policy permitting the BOP to provide for the protection and safekeeping of the inmates within its care. 18 U.S.C. §§4042(a)(2) and (3). Classification and assignment decisions, as well as allocations of guards and other correctional staff fall within the discretionary exception to the FTCA. Cohen, *supra* at 1344. The BOP's decision to house the plaintiff in general population is consistent with the public policy of affording prison administrators wide-ranging deference in implementing and executing policies, because discretion is needed to preserve internal discipline and maintain institutional security. Bell v. Wolfish, 441 U.S. 520, 547 - 48 (1979). "Prison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials base such decisions are inherently grounded in social, political, and economic policy." Dykstra v. United States Bureau of Prisons, 140 F.3d 791, 796 (8th Cir. 1998). Because §4042(a) "is an established governmental policy . . . [that] allows a Government agent to exercise discretion" in providing for the safekeeping, protection, and care of inmates, it must be "presumed that the [BOP's] acts are grounded in policy when exercising that discretion." Gaubert, *supra* at 324.

Here, because the plaintiff has offered little or nothing to refute the United States' arguments or the evidence used to support them, he has failed to show that there was a mandatory directive that was violated. Accordingly, the undersigned finds that the BOP's decisions not to create a CIM separatee status to keep the plaintiff away from members of his victim's family members; to place him in the general population with the inmate who ultimately attacked him; and to wait for backup support before attempting to intervene in a fight between inmates, are the kind of conduct that the discretionary function exception was intended to protect. While the undersigned finds that the attack on plaintiff was unfortunate, the plaintiff has produced no evidence to show that the BOP staff

violated any prescribed mandatory duty. Thus, the undersigned finds that this court lacks subject matter jurisdiction to consider his claims.

## B. Medical Negligence

As ground four of his FTCA complaint, the plaintiff alleges that staff was deliberately indifferent[2] to his medical care by refusing him medication and not following proper medical personnel orders. More detail of this claim is available in his brief to the Fourth Circuit on appeal of the District Court's September 11, 2012 Memorandum Opinion and Order dismissing his original complaint. Specifically, the plaintiff alleged in his informal brief that he received stab wounds of the face near his left eye. The wounds to his back and ribs required staples, and the injury to his left hand required stiches. The plaintiff alleged that the [outside] hospital doctors indicated to prison staff that he remain in the hospital and under observations from April 30, 2009 to May 2, 2009. However, the plaintiff maintained that prison staff extracted him from the hospital on May 1, 2009. The plaintiff further alleged that the medication issued to him was withdrawn by prison staff upon his return to prison, where staff confined him to the Special Housing Unit. Finally, plaintiff alleged that the doctors at the community hospital prescribed five medications, but health services gave him only three. The plaintiff maintained that the arbitrary elimination of prescribed medications contributed to his pain and suffering.

To establish a medical negligence claim in West Virginia, the plaintiff must prove:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or

---

[2] The undersigned notes that the standard of care in a FTCA claim is not deliberate indifference, but instead, is negligence.

similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W.Va. Code § 55-7B-3.

When a medical negligence claim involves an assessment of whether or not the plaintiff was properly diagnosed and treated and/or whether the health care provider was the proximate cause of the plaintiff's injuries, expert testimony is required. <u>Banfi v. American Hospital for Rehabilitation</u>, 529 S.E.2d 600, 605-606 (W.Va. 2000).

Additionally, under West Virginia law, certain requirements must be met before a health care provider may be sued. W.Va. Code §55-7B-6. This section provides in pertinent part:

> **§ 55-7B-6. Prerequisites for filing an action against a health care provider; procedures; sanctions**
>
> (a) Notwithstanding any other provision of this code, no person may file a medical professional liability action against any health care provider without complying with the provisions of this section.
> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

This Court previously held that compliance with W.Va. Code §55-7B-6 is mandatory prior to filing suit in federal court. See Stanley v. United States, 321 F.Supp.2d 805, 806-807 (N.D.W.Va. 2004).[5]

With regard to the appropriate standard of care, the plaintiff has completely failed to sustain his burden of proof. The plaintiff does not assert, much less establish, the standard of care for the treatment of stab wounds or the administration of pain medication following such wounds.[6] Under the circumstances of this case, plaintiff would be required to produce the medical opinion of a qualified health care provider in order to raise any genuine issue of material fact with respect to a breach of the duty of care. Moreover, to the extent the plaintiff's medical negligence claims arise in West Virginia, there is nothing in the complaint which reveals that the plaintiff has met the requirements of W.Va. Code §55-7B-6.

## C. BOP Administrative Grievance Process

"The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." McNeil v. United States, 508 U.S. 106, 113 (1993)(upholding the district court's dismissal of an unexhausted FTCA claim for lack of jurisdiction. The statute provides that an FTCA claim must be "presented in writing to the appropriate Federal agency within two years after such claim accrues or unless action is begun within six months after the date of mailing…of notice of final denial of the claim by the agency to whom it was presented." 28 U.S.C. § 2401(b). Failure to comply with these administrative deadlines deprives the district

---

[5] In Stanley, the plaintiff brought suit against the United States alleging that the United States, acting through its employee healthcare providers, was negligent and deviated from the "standards of medical care" causing him injury.

[6] The plaintiff offers no pleadings, affidavits, or declarations from any medical professional that establishes the applicable community standards for the treatment of stab wounds or the administration of pain medication following a stabbing.

court of jurisdiction to hear the claim. To present a claim, the plaintiff need not allege specific legal theories or grounds of relief, instead a claim is properly presented "if the claimant 1) gives the agency written notice of his or her claim sufficient to enable the agency to investigate and 2) places a value on his or her claim." Douglas v. United States, 658 F.2d 445,447 (6th Cir. 1981)(citing Adams v. United States, 615 F.2d 28, 289 (5th Cir. 1980)); see also Conn v. United States, 867 F.2d 916, 918-19 (6th Cir. 1989); 28 C.F.R. § 14.2(a). Any cause of action that is "fairly implicit in the facts" is one that is properly presented for purposes of exhaustion. Palay v. United States, 349 F.3d 418, 426 (7th Cir. 2003)(internal citations and quotation marks omitted).

Assuming, without deciding, that the plaintiff's claim that BOP staff interfered with and hindered the administrative remedy process, it is clear that this claim has not been exhausted, and the court is without jurisdiction to consider it. The plaintiff prepared his administrative tort claim on June 16, 2010. Encompassing six pages, the administrative claim alleges staff negligence, medical negligence and deliberate indifference which nearly resulted in his death. The plaintiff provides detailed information to the actions and inactions of various BOP employees which he claims led to the assault which occurred on April 30, 2010. However, nowhere does the plaintiff mention the administrative grievance process, let alone claim that staff interfered with and hindered the process. (Doc. 99-1, pp. 8-13). This claim is separate and distinct from the plaintiff's claims regarding the failure of staff to adequately protect him from harm at the hands of another inmate and his claim of medical negligence. Therefore, this claim is not fairly implied by the plaintiff's administrative complaint, and should be dismissed without prejudice for failure to exhaust.

## V. Recommendation

In consideration of the foregoing, it is the undersigned's recommendation that the defendant's Motion to Dismiss or, in the alternative, Motion for Summary Judgment (Doc. No. 98) be **GRANTED** and the plaintiff's Complaint be **DISMISSED with prejudice**, except that the plaintiff's claim regarding staff interference with the administrative grievance process should be **DISMISSED WITHOUT PREJUDICE**.

Within **fourteen (14) days** after being served with a copy of this recommendation, any party may file with the Clerk of the Court written objections identifying the portions of the recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985) Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), *cert. denied,* 467 U.S. 1208 (1984).

The Clerk of Court is directed to provide a copy of this Report and Recommendation to all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Filing in the United States District Court.

Dated: August 1, 2014

*John S. Kaull*
JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE