IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA


MICHAEL LITTLE

        Plaintiff,

v.                                            Civil Action No. 5:11CV41
                                                             (STAMP)
UNITED STATES OF AMERICA,

        Defendant.


**MEMORANDUM OPINION AND ORDER**
**ADOPTING REPORT AND RECOMMENDATION;**
**GRANTING DEFENDANT'S MOTION TO DISMISS,**
**OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT; AND**
**DENYING PLAINTIFF'S MOTION FOR AN EVIDENTIARY HEARING**

I.  Procedural History

On March 14, 2011, the pro se[1] plaintiff, a federal prisoner
incarcerated at USP Coleman, filed this civil rights action
pursuant to Bivens v. Six Unknown Named Agents of the Federal
Bureau of Narcotics, 403 U.S. 388 (1971).  The complaint asserts
that the defendants, all federal employees of United States
Penitentiary Hazelton ("USP Hazelton"), violated the plaintiff's
constitutional rights in connection with an incident which occurred
during his incarceration at USP Hazelton on April 30, 2009.  The
plaintiff alleges that, less than 24 hours after he arrived at
Hazelton, he was attacked in his cell block by the brother of the
victim who the plaintiff was convicted of killing, and the attack
resulted in multiple stab wounds which required hospitalization.

---

[1]"Pro se" describes a person who represents himself in a court
proceeding without the assistance of a lawyer.  Black's Law
Dictionary 1416 (10th ed. 2014).

The plaintiff claims that defendant Cathy Milton,[2] former Case Manager Coordinator at USP Hazleton, is liable for this attack by failing to investigate whether any relatives of the plaintiff's victim were incarcerated in the general population at Hazelton. The plaintiff asserts liability against former Special Investigating Supervisor W. Holzapful ("Holzapful") as a result of Holzapful's failure to place the plaintiff in the Special Housing Unit pending the investigation that the plaintiff says should have been completed. Finally, liability is claimed against Correctional Officer Adam Price ("Price") as a result of his failure to prevent the plaintiff's attacker from entering the plaintiff's housing unit.

The complaint was referred to United States Magistrate Judge John S. Kaull for initial review and report and recommendation pursuant to Local Rule of Prisoner Litigation Procedure 2. Magistrate Judge Kaull then issued a report and recommendation recommending that this Court dismiss the plaintiff's <u>Bivens</u> claims, and his FTCA claim as untimely if such a claim was properly brought. This Court adopted the report and recommendation dismissing the <u>Bivens</u> claims and finding his FTCA claim untimely. The plaintiff appealed and the United States Court of Appeals for the Fourth Circuit vacated the portion of this Court's order

---

[2]The plaintiff identifies Case Manager Coordinator Milton as "case manager U.S.P. Hazelton name unknown." The defendants have since identified the case manager against which the plaintiff asserts liability as Cathy Milton.

dismissing the possible FTCA claim but affirmed the portion of this Court's order dismissing the <u>Bivens</u> claim. The plaintiff was then directed to file an amended complaint. In his amended complaint, the plaintiff reasserts his claims as FTCA claims. However, he asserts those claims against the government instead of against the individual federal employees discussed above. Further, the plaintiff asserts that staff misconduct led him to not exhaust his administrative remedies. The government then filed a motion to dismiss the amended complaint, or in the alternative, motion for summary judgment.

Thereafter, Magistrate Judge Kaull entered a report and recommendation recommending that the plaintiff's action be dismissed. The plaintiff timely filed objections to the report and recommendation and a motion for an evidentiary hearing.

## II. <u>Facts</u>

To reiterate, the plaintiff asserts in his complaint that Hazelton staff improperly classified him, allowed him to be in a unit with family members of his victim, failed to properly screen other inmates for weapons, failed to provide him adequate medical treatment after the fight, and impeded him from exhausting his administrative remedies.

In its motion to dismiss, the government argues that the plaintiff's complaint must be dismissed because the medical malpractice claim was improperly filed because the plaintiff failed to file a screening certificate of merit as required by West

Virginia Code § 55-7B-6, the statute that provides the procedure a plaintiff must follow who is seeking to bring an action against a health care provider. Further, the government asserts that the plaintiff's claim as to staff misconduct with regard to the administrative remedy process fails to state a claim. Additionally, the government argues that the improper classification and failure to protect claims should be dismissed under the discretionary function exception to the FTCA.

In response, the plaintiff denies each of the government's arguments stating that he is not required to follow West Virginia law because he is a federal inmate, he has stated a claim upon which relief may be granted, and the discretionary function exception does not apply as the Hazelton staff members are not eligible for qualified immunity.

Magistrate Judge Kaull recommended in his report and recommendation that this Court dismiss this claim. The magistrate judge first found that the classification of an inmate is a discretionary function of the United States Bureau of Prisons ("BOP") and that the plaintiff has not shown that a "family tree" search of an inmate must be conducted before an inmate is classified, thus the discretionary function exception applies to the plaintiff's claims. As to the plaintiff being in the general population, the magistrate judge first noted that the intake officer noted that when the plaintiff was asked if he could be in the general population, he did not verbally respond but instead

grabbed his genitals. Further, the magistrate judge found that even if the plaintiff had voiced such a concern, the placement of inmates in the general population is a discretionary function of USP Hazelton once staff has performed an interview and considered certain information (such as a defendant's presentence report which is conducted prior to sentencing) and both were performed in this case. Additionally, the magistrate judge found that the plaintiff has not shown that mandatory directives were violated by staff or that a BOP employee made a discretionary judgment not grounded in the policy of the BOP.

As to the plaintiff's medical malpractice claim, the magistrate judge found that the plaintiff failed to provide the appropriate standard of care for treatment of stab wounds, has not produced a medical opinion of a qualified health care provider, nor has he met the requirements of the medical malpractice statute. Lastly, the magistrate judge dismissed without prejudice the plaintiff's administrative remedies claims for failure to exhaust.

In his objections, the plaintiff first contends that if he had grabbed his genitals in front of Holzapful, he would have been written up for a violation and thus, this shows that Holzapful is lying about what occurred at the intake interview. Next, the plaintiff reasserts his argument that Price is lying about what occurred when the unauthorized inmate entered the unit and that the videotape footage of what happened in the unit should have been submitted as evidence. The plaintiff also asserts that he should

not be held to the requirements of the West Virginia medical malpractice statute as he is <u>pro se</u> and is in need of an attorney (the magistrate judge has previously denied the plaintiff's motions for counsel).  Finally, the plaintiff argues that he did not exhaust his administrative remedies because the staff misled him into believing that they had been filed and otherwise would not provide him with the administrative forms he needed.

The plaintiff also filed a motion for an evidentiary hearing along with his objections.  The plaintiff asserts that an evidentiary hearing is required so that the surveillance tape from the unit and the documents related to the intake interview can be reviewed by this Court.

For the reasons stated below, this Court adopts and affirms the magistrate judge's report and recommendation in its entirety and denies the plaintiff's motion for an evidentiary hearing.

III. <u>Applicable Law</u>

A.  <u>Standard of Review for Report and Recommendation</u>

Pursuant to 28 U.S.C. § 636(b)(1)(C), this Court must conduct a <u>de novo</u> review of any portion of the magistrate judge's recommendation to which objection is timely made.  Because objections have been filed in this case, this Court will undertake a <u>de novo</u> review as to those portions of the magistrate judge's recommendations which were addressed.  However, as to the portion upon which no objections were received, the findings and

recommendation will be upheld unless they are "clearly erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A).

B.    Standard of Review for a Motion to Dismiss

Rule 12(b)(6) of the Federal Rules of Civil Procedure allows a defendant to raise the defense of "failure to state a claim upon which relief can be granted" as a motion in response to a plaintiff's complaint before filing a responsive pleading.

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the factual allegations contained in the complaint as true.  Advanced Health-Care Servs., Inc. v. Radford Cmty. Hosp., 910 F.2d 139, 143 (4th Cir. 1990). Dismissal is appropriate only if "'it appears to be a certainty that the plaintiff would be entitled to no relief under any state of facts which could be proven in support of its claim.'"  Id. at 143-44 (quoting Johnson v. Mueller, 415 F.2d 354, 355 (4th Cir. 1969)); see also Rogers v. Jefferson-Pilot Life Ins. Co., 883 F.2d 324, 325 (4th Cir. 1989).

A motion to dismiss for failure to state a claim under Rule 12(b)(6) should be granted only in very limited circumstances, as the pleading requirements of Federal Rule of Civil Procedure 8(a)(2) only mandate "a short and plain statement of a claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Still, to survive a motion to dismiss, the complaint must demonstrate the grounds to entitlement to relief with "more than labels and conclusions . . . factual allegations must be enough to

raise a right to relief above the speculative level." <u>Bell</u>
<u>Atlantic v. Twombly</u>, 550 U.S. 544, 555 (2007); <u>see also</u> <u>Ashcroft v.</u>
<u>Iqbal</u>, 556 U.S. 662, 663-666 (2009).

C.    <u>Standard of Review for Motion for Summary Judgment</u>

Under Federal Rule of Civil Procedure 56(c), summary judgment
should be granted if "the pleadings, depositions, answers to
interrogatories, and admissions on file, together with the
affidavits, if any, show that there is no genuine issue as to any
material fact and that the moving party is entitled to a judgment
as a matter of law."  The party seeking summary judgment bears the
initial burden of showing the absence of any genuine issues of
material fact.  <u>See</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23
(1986).  "The burden then shifts to the nonmoving party to come
forward with facts sufficient to create a triable issue of fact."
<u>Temkin v. Frederick County Comm'rs</u>, 945 F.2d 716, 718 (4th Cir.
1991), <u>cert. denied</u>, 502 U.S. 1095 (1992) (citing <u>Anderson v.</u>
<u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986)).

"[A] party opposing a properly supported motion for summary
judgment may not rest upon the mere allegations or denials of his
pleading, but . . . must set forth specific facts showing that
there is a genuine issue for trial."  <u>Anderson</u>, 477 U.S. at 256.
The Court must perform a threshold inquiry to determine whether a
trial is needed -- whether, in other words, "there are any genuine
factual issues that properly can be resolved only by a finder of
fact because they may reasonably be resolved in favor of either

party." Id. at 250; see also Charbonnages de France v. Smith, 597
F.2d 406, 414 (4th Cir. 1979) (stating that summary judgment
"should be granted only in those cases where it is perfectly clear
that no issue of fact is involved and inquiry into the facts is not
desirable to clarify the application of the law.") (citing Stevens
v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950)).

"[T]he plain language of Rule 56(c) mandates the entry of
summary judgment, after adequate time for discovery and upon
motion, against a party who fails to make a showing sufficient to
establish the existence of an element essential to that party's
case, and on which that party will bear the burden of proof at
trial." Celotex, 477 U.S. at 322. In reviewing the supported
underlying facts, all inferences must be viewed in the light most
favorable to the party opposing the motion. See Matsushita Elec.
Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV.  Discussion

A.  Discretionary Function Exception to the FTCA

The FTCA waives the federal government's traditional immunity
from suit for claims based on the negligence of its employees. 28
U.S.C. § 1346(b)(1). The FTCA also "permits the United States to
be held liable in tort in the same respect as a private person
would be liable under the law of the place where the act occurred."
Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The
United States cannot be sued, however, unless Congress has waived

the government's sovereign immunity and authorized suit under the FTCA.  <u>Dalehite v. United States</u>, 346 U.S. 15, 30-31 (1953).

Pursuant to 28 U.S.C. § 2680(a), the United States' general waiver of sovereign immunity under 28 U.S.C. § 1346(b) does not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.

This exception, referred to as the discretionary function exception, "insulates the United States from liability for its agents and employees' performance of duties involving discretionary decisions."  <u>Williams v. United States</u>, 50 F.3d 299, 308 (4th Cir. 1995).   The purpose of the exception is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort."   <u>United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Variq Airlines)</u>, 467 U.S. 797, 814 (1984).

A two-step test is used for determining whether the discretionary function exception bars an FTCA action.  First, the Court must consider the nature of the conduct and determine whether it involves an "element of judgment or choice."  <u>United States v. Gaubert</u>, 499 U.S. 315, 322 (1991).  "If a statute or regulation mandates a certain course of action, there is no element of

10

discretion." <u>Branch v. United States</u>, No. 2:05cv423, 2006 WL 1770995, at *3 (E.D. Va. June 22, 2006) (citing <u>Hawes v. United States</u>, 409 F.3d 213, 216 (4th Cir. 2005)).  If the conduct in question does involve an "element of judgment or choice[,]" the court must then determine whether that judgment is grounded in considerations of public policy.  <u>Id.</u> at 322-23.  Further, the plaintiff bears the burden of proving that an equivocal waiver of sovereign immunity exists and demonstrating that the discretionary function exception does not apply.  <u>LeRose v. United States</u>, 285 F. App'x 93, 96 (4th Cir. 2008).

As to federal prisoners, such as the plaintiff, the United States Supreme Court has determined that the duty of care owed by the BOP is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule.  <u>United States v. Munitz</u>, 280 F. Supp. 542, 546 (S.D.N.Y. 1968).  Section 4042 defines the duty of care owed to a prisoner as "the exercise of ordinary diligence to keep prisoners safe and free from harm."  <u>Jones v. United States</u>, 534 F.2d 53, 54 (5th Cir. 1976).  However, since § 4042 does not direct how the duty is fulfilled, a court reviewing a claim must look to the FTCA for such guidance.  <u>Calderon v. United States</u>, 123 F.3d 947, 950 (7th Cir. 1997).  Under the FTCA, in disputes between prisoners, BOP employees could be negligent in their duty if they "knew or reasonably should have known of a potential problem" between inmates.  <u>Parrott v. United States</u>, 536 F.3d 629, 637 (7th Cir. 2008).

1.  <u>Improper Classification</u>

In order to classify an inmate, the BOP must review material regarding the offender from the sentencing court, the United States Probation Office, and the United States Marshals Service.  Upon receiving those materials, the BOP will determine whether an inmate must be separated from another inmate and the BOP's National Computer, SENTRY, is then updated with this information.  ECF No. 9 *9.  The plaintiff contends that he was improperly classified through this process because all persons related to his victim were not designated as "separatees," persons who had to be housed separately from the plaintiff.

The plaintiff's contention fails, however, as maintaining order and security in a prison, which is why such a classification process is conducted, has been held to fall within the discretionary function exception.  <u>See</u> <u>Cohen v. United States</u>, 151 F.3d 1388, 1344 (11th Cir. 1998).  Further, as the magistrate judge noted, the plaintiff has not alleged that his sentencing materials were not considered or that he was designated as a separatee from his attacker.  He has only argued that a more thorough search for all persons that are related to the victim should be completed, which is not part of the BOP's policy and would in most cases prove to be impractical.  Further, such a process may seem limitless as the plaintiff has not set forward how much of a family tree would need to be investigated before such a requirement was satisfied. As such, the plaintiff has failed to carry his burden to show that

the United States classified him in violation of any mandatory duty and thus his claim must be dismissed.

    2.  <u>Placement in General Population</u>

    The relevant portions of P.S. 5290.15, which tracks and quotes 28 C.F.R. § 522.21(a), require that institutional staff "ensure that a newly arrived inmate is cleared by the Medical Department and provided a social interview by staff before assignment to the general population." This social interview must be aimed at determining "if there are non-medical reasons for housing the inmate away from the general population," and requires that the interviewer review the SENTRY information[3] and the Inmate Central File, in order to determine whether the inmate is suitable for placement in general population. P.S. 5290.15 also directs staff to "place particular emphasis on the Central Inmate Monitoring [CIM] status," and "to ensure separatees are not housed together, staff shall access the newly received inmate's SENTRY-generated Intake Screening form and thoroughly review the CIM Clearance and Separatee Data to identify any separatees currently housed in the institution." Staff making housing decisions are required to review the results of the intake screening process "to ensure restrictions are noted prior to assignment." <u>Id.</u>

---

    [3]SENTRY is the BOP's "primary mission support database." <u>Select Application Controls Review of the Federal Bureau of Prisons's Sentry Database System</u>, Report No. 03-25 July 2003, Office of the Inspector General. The SENTRY system is used to collect, maintain, and report inmate information including but not limited to "inmate institution assignment, inmate population, and sentence data." <u>Id.</u>

This Court has previously found that staff is only required to conduct the actual interview and consider certain information. However, how that information is considered is a matter of discretion. <u>Usry v. United States</u>, 5:11CV141, 2013 WL 1196650 at *9, n. 6 (N.D. W. Va. Mar. 25, 2013), <u>aff'd</u>, 545 F. App'x 265 (4th Cir. 2013). Thus, the plaintiff's dispute as to the content of the plaintiff's intake interview which placed him in the general population is irrelevant. <u>See</u> <u>id.</u> (finding the same). Further, this Court has found that placement in the general population, even when notations have been made in the inmate's file regarding the heightened security concerns between the plaintiff and another inmate or group of inmates at the same facility, is within the discretion of the BOP and its staff. <u>Id.</u> at *6. Thus, the decision made by Holzapful in placing the plaintiff in the general population was within the bounds of the mandatory duties set forth under P.S. 5290.15 and the discretionary function exemption therefore applies. As such, the plaintiff has failed to state a claim under the FTCA.

3. <u>Response by Price During Attack on Plaintiff</u>

The plaintiff alleges that Price allowed an unauthorized inmate to enter the unit without clearing the metal detector and did not try to stop the fight that ensued between the plaintiff and the other inmate. Further, the plaintiff contends that videotape evidence should have been provided which would have supported the plaintiff's assertions.

14

The government, however, has provided an affidavit from Price which states that Price saw the unauthorized inmate entering the plaintiff's housing unity at which time Price ordered the inmate to stop but the unauthorized inmate refused. Price then followed the inmate into the plaintiff's housing unit and observed the inmate and the plaintiff assaulting each other. Price radioed for staff assistance and gave multiple orders for the inmates to stop fighting, orders which were ignored. Once more staff arrived, the staff gained control of the plaintiff through the use of force and the other inmate threw his weapon to the ground. Both inmates were then placed in restraints and escorted to Health Services. ECF No. 99 *16 (citing Ex. 4, Decl. of Officer Adam Price).

This Court and numerous other courts have held that a federal prisoner's claim under the FTCA for injuries caused by a fellow inmate are uniformly held to be barred by the discretionary function exception. Donaldson v. United States, 281 F. App'x 75, 76-78 (3rd Cir. 2008) (upholding dismissal of FTCA claim that federal prison employees failed to protect plaintiff from assault by a fellow prisoner on a finding that the claim was barred by the discretionary function exception); Calderon, 123 F.3d at 948-49 (same); Buchanan v. United States, 915 F.2d 969 (5th Cir. 1990) (discretionary function exception applied to FTCA claim for damages by prisoners held hostage by other inmates during a prison uprising); Usry, 2013 WL 1196650 at *8. The plaintiff's claim in this action is no different and the action by Price clearly

involved an "element of judgment or choice." <u>Gaubert</u>, 499 U.S. at 322.

Further, plaintiff's recollection of the events is not necessarily different from that provided by the government and thus, his assertion that videotape evidence is needed is meritless. Price contends that the unauthorized inmate entered the unit without permission and that he verbally ordered the inmate to stop. This coincides with the plaintiff's allegation that Price allowed the unauthorized inmate to come into the unit without going through the metal detector.

Finally, the plaintiff has not shown that Price's decision to wait for further staff members before breaking up the fight was not grounded in the policy of the regulatory regime. <u>See</u> <u>Calderon</u>, 123 F.3d at 950. Inapposite, "[p]rison officials supervise inmates based upon security levels, available resources, classification of inmates, and other factors. These factors upon which prison officials base such decisions are inherently grounded in social, political, and economic policy." <u>Dykstra v. United States Bureau of Prisons</u>, 140 F.3d 791, 796 (8th Cir. 1998). The plaintiff has not shown that Price's decisions regarding the unauthorized inmate entering the plaintiff's unit and the altercation which followed were not based on his discretion of how to supervise the inmates. This Court will not speculate or question the BOP's policy as to how to handle inmate fights as such decisions are clearly intended

to be shielded by the discretionary function exception.  As such, the plaintiff's claim must be dismissed.

B.  <u>Medical Malpractice Claim</u>

The FTCA "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." <u>Medina v. United States</u>, 259 F.3d 220, 223 (4th Cir. 2001).  Because the alleged medical malpractice upon which the plaintiff bases his claim occurred at USP Hazelton, a federal institution located in West Virginia, West Virginia substantive law applies in this case.  To prove a medical negligence claim in West Virginia, the plaintiff must establish that:

> (a) the health care provider failed to exercise that degree of care, skill, and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury or death.

W. Va. Code § 55-7B-3.  Expert testimony is required if the medical negligence claim involves an assessment of whether the plaintiff was properly diagnosed and whether the health care provider was the proximate cause of the plaintiff's injuries.  <u>Banfi v. Am. Hosp. for Rehab.</u>, 529 S.E.2d 600, 605-06 (W. Va. 2000).  Moreover, West Virginia Code § 55-7B-6 sets forth certain requirements that must be met before a health care provider may be sued.  Compliance with the requirements of West Virginia Code § 55-7B-6 is mandatory prior

to filing suit in federal court.  <u>Stanley v. United States</u>, 321 F.
Supp. 2d 805, 806-07 (N.D. W. Va. 2004).

Thus, the prerequisites for filing an action against a health
care provider are as follows:

> (b)  At least thirty days prior to the filing of a
> medical professional liability action against a health
> care provider, the claimant shall serve by certified
> mail, return receipt requested, a notice of claim on each
> health care provider the claimant will join in
> litigation.  The notice of claim shall include a
> statement of the theory or theories of liability upon
> which a cause of action may be based, and a list of all
> health care providers and health care facilities to whom
> notices of claim are being sent, together with a
> screening certificate of merit.  The screening
> certificate of merit shall be executed under oath by a
> health care provider qualified as an expert under the
> West Virginia rules of evidence and shall state with
> particularity: (1) The expert's familiarity with the
> applicable standard of care in issue; (2) the expert's
> qualifications; (3) the expert's opinion as to how the
> applicable standard of care was breached; and (4) the
> expert's opinion as to how the breach of the applicable
> standard of care resulted in injury or death.  A separate
> screening certificate of merit must be provided for each
> health care provider against whom a claim is asserted.
> The person signing the screening certificate of merit
> shall have no financial interest in the underlying claim,
> but may participate as an expert witness in any judicial
> proceeding.  Nothing in this subsection may be construed
> to limit the application of rule 15 of the rules of civil
> procedure.

W. Va. Code § 55-7B-6.

Although the plaintiff asserts that he should not be held to
the standards of West Virginia law, he must be so held as his
injuries occurred at a federal correctional institution located in
West Virginia and the treatment complained of occurred in West
Virginia.  The plaintiff, through objections, had the opportunity
to attempt to assert that he had complied with the medical

malpractice statute and the requirements to bring such a claim and he chose not to do so. As such, this Court finds that the plaintiff has not complied with the substantive law in West Virginia regarding medical malpractice claims. The plaintiff has not asserted the standard of care for the treatment of a stab wound, the plaintiff did not produce the medical opinion of a qualified health care provider, and the plaintiff has not complied with the requirements of § 55-7B-6. Thus, his medical malpractice claim must be dismissed.

C.  Exhaustion of Administrative Remedies

The plaintiff has not objected to the magistrate judge's finding that the plaintiff's claim that BOP staff interfered with and hindered his administrative remedy process should be dismissed without prejudice. In his report and recommendation, the magistrate judge noted that the plaintiff has provided detailed information as to how BOP employees handled his grievances through the administrative remedy processes. However, the magistrate judge further noted that the plaintiff has not mentioned whether the plaintiff has exhausted such claims through the administrative remedy process. As such, the magistrate judge found that as this claim is separate and distinct from the plaintiff's other claims, and the plaintiff did not fairly imply such a claim in his complaint, the claim should be dismissed without prejudice for failure to exhaust.

In order to present a FTCA claim, the plaintiff must (1) give the government agency written notice of his or her claim with sufficient to enable the agency to investigate and (2) place a value on the claim. 28 C.F.R. § 14.2(a). As the plaintiff has not provided information as to how he exhausted this claim, he has failed to fulfill the requirements above. Accordingly, this Court adopts the magistrate judge's finding, as it is not clearly erroneous, and dismisses the plaintiff's claim as to the hindrance of his administrative remedy process without prejudice.

D.  <u>Motion for Evidentiary Hearing</u>

It is generally within the sound discretion of the district court whether to hold an evidentiary hearing. <u>United States v. Robinson</u>, 238 F. App'x 954, 955 (4th Cir. 2007). However, when rulings depend on issues of credibility or when there are disputed facts "involving inconsistencies beyond the record, a hearing is mandated." <u>Id.</u> The resolution of the plaintiff's action does not involve either resolving inconsistencies beyond the record or credibility issues. This Court was able to make the above findings based on the record itself. Therefore, this Court denies the plaintiff's motion for an evidentiary hearing.

V.  <u>Conclusion</u>

For the reasons set forth above, this Court, after a <u>de novo</u> review, AFFIRMS and ADOPTS the magistrate judge's report and recommendation. Accordingly, the defendant's motion to dismiss, or in the alternative, for summary judgment (ECF No. 98) is GRANTED

and the plaintiff's objections (ECF No. 128) are OVERRULED. The plaintiff's complaint is thus DISMISSED WITH PREJUDICE on all claims except for his claim as to exhaustion of his claim regarding the hindrance of his administrative remedies. As to his claim regarding the hindrance of his administrative remedies, the plaintiff's claim is DISMISSED WITHOUT PREJUDICE. Further, the plaintiff's motion for an evidentiary hearing (ECF No. 128) is DISMISSED. It is ORDERED that this civil action be DISMISSED and STRICKEN from the active docket of this Court.

Should the plaintiff choose to appeal the judgment of this Court to the United States Court of Appeals for the Fourth Circuit on the issues to which objection was made, he is ADVISED that he must file a notice of appeal with the Clerk of this Court within sixty days after the date of the entry of the judgment order.

IT IS SO ORDERED.

The Clerk is directed to transmit a copy of this order to the pro se plaintiff by certified mail and to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED:    August 18, 2014


                              /s/ Frederick P. Stamp, Jr.
                              FREDERICK P. STAMP, JR.
                              UNITED STATES DISTRICT JUDGE